Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable United Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. Welcome to the Fourth Circuit this morning. Our colleague Judge Shedd is joining us by the magic of the Internet, and I think counsel has been given instructions on how they are to pause when Judge Shedd raises his hand for a question. So with that, we'll begin in our first case, United States v. Triple Canopy. Mr. Scarborough. May it please the Court, Charles Scarborough, Department of Justice for the United States. I would like to try to preserve three of my 15 minutes for rebuttal. In this Court's prior decision, it adopted the implied certification theory and held that the United States had stated a claim under that theory by alleging that Triple Canopy knowingly billed the Army for guards who had not passed the basic marksmanship test required under the governing contract and actively falsified marksmanship scorecards in order to dupe the Army into paying for rejected the argument that, quote, implied representations can give rise to liability only when the condition is expressly designated a condition of payment, and it held that Triple Canopy's violations of the marksmanship requirement were material because, quote, common sense strongly suggests that the government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight. Nothing in the Supreme Court's decision in Escobar calls any of these conclusions into question. Instead, Escobar validates all the primary predicates before this Court's prior decision. In Escobar, the Supreme Court endorsed the implied certification theory. That sort of ends your argument there, doesn't it? I'm sorry? I said that sort of ends your argument, doesn't it? Yes, it does, Your Honor, but presumably we're having a re-argument here because there is some question as to whether Escobar changes the law, and I'm here to try to explain why we think that Escobar is on all fours with this Court's prior decision. Right. I understand that. Having stated what you stated, that's really some of the... That is a sufficient basis. No, I mean, to be candid, Your Honor, we believe that the Court could simply write the same decision, plug in sites to Escobar where appropriate. For instance, on the notion that you don't need a condition of payment to be expressly It seems to be just two things that Escobar really brings to the question. That is, the question of whether the allegations are specific, requirements are met. Secondly, are they material? That's correct, Your Honor. I think you serve us well by simply just going straight to those two things and decide on whether that case changes what we wrote previously. That's where I'm headed, Your Honor, and I'm sorry for the long wind-up. On the specific threshold matter, point out that what the Supreme Court said in Escobar is that the implied certification theory can be a basis for liability at least where two conditions are satisfied, and the first condition is that there be some sort of specific representation in the claim itself. It didn't rule out sort of a broader theory that virtually any demand for payment... So the representation here is God's. Is that it? No, the representation here, Your Honor, is the entire package of the claim that was submitted. Now, I urge the Court to look at JA-57. That's probably the best place to start. The complaint goes through and explains the 12 monthly claims that were submitted, and each of those claims had attached to it this DD-250 form. And tie that in to the representation in Escobar where they said that was about services, therapy, and secondly, who provided them, social workers. That seems to be pretty specific. What are those representations here? Your Honor, actually, the representation that was made, the claim that was actually submitted in Escobar, which I briefed in the Supreme Court and argued the remand decision in Escobar itself, was just a Medicaid billing code. It was just an eight-digit code that basically referenced psychiatric counseling services that were being provided. And so what that suggested to the reasonable government payor is, okay, you have complied with all the things that go along with psychiatric services, including proper licensing, proper supervision, and so on and so forth. So what I'm suggesting here is that, and the Supreme Court found that that was a specific representation sufficient to trigger the implied certification theory, and it found it as a matter of law, not as a jury question, but as a matter of law. And this case has much more in the way of specific representations. Again, JA-57. Let me ask a question. I don't understand your response to the question that Judge Wynn asked you. I find it astute of him, and I can't hear 100 percent, but I thought he said this has to do with the guards. That's what our opinion focused on. Why doesn't it focus on the guards in this case? You don't think you can make a case on the guards? Oh, absolutely. Or you want to broaden it? Why do you have to broaden it beyond the guards? I don't have to broaden it beyond the guards, Your Honor. Then why don't you make the argument on the guards then? Well, again, yes, okay, I'll just stick to the guards, but there is much more than the guards. But just with respect to the guards, you have to understand the term guards with reference to the contract, which is also referenced in the claim for payment. The specific task order, Task Order 11, is referenced there. And so you look, well, what does it mean to be a guard here? And one of the quintessential things that it means to be a guard is that you have passed this marksmanship requirement. All I was trying to suggest, Judge Shedd, in response to Judge Wynn's question, is that whatever is represented in the claim for payment, in the invoice, you have to understand that in context, whatever the underlying regulatory context is here. In Escobar, it was the Medicaid regulatory scheme, which required licensing and supervision in the provision of psychiatric care. Here, it is the underlying contract, which makes very clear that your guards have to have passed this marksmanship test. So yes, guards is sufficient. All I was trying to suggest, and perhaps leaping ahead and perhaps inartfully, was that we have much more than guards. We have reference to the specific contract here, clearly. We have lists of the unit prices, the total number of units. We also have a place on the DD-250 that says the items conform to contract, except as noted herein. So again, lots and lots of references to the underlying context. I know that, but the counter-argument is they provided guards. They provided guards. Don't you have to make an argument that there is some core function of a guard that everybody knows and that core function, at a minimum, is the ability to shoot, to stop somebody who otherwise won't obey every other order you give them? Yes, Your Honor. Again, the way you understand that to be the case is by looking at the contract itself, JA-99, one of the core requirements for a guard, for security personnel generally, is that you have passed this marksmanship test. It's an objective qualification that the complaint alleges was repeatedly violated. Nobody, nobody of the people provided satisfied this requirement. So my point is simply that you understand the representation being made in the claim for payment in context. Escobar validates that way of understanding the representation. Again, in Escobar, it was just a Medicaid billing code, an eight-digit number, that was submitted to the government. You have to understand that with respect to the underlying regulatory scheme. Here, you have to understand that with respect to the underlying contract. Let me ask you a specific question about the document at page, the Joint Appendix, page 57. The first item is a procurement instrument identification. Is that long number what references the task order? The long number, I think Your Honor is referring to at the beginning there, on sort of one of that, is the global contract under which the services were procured. The next thing over to the right, it says order number 0011. That's the task order that's referenced. So you've got the overarching contract, then you've got the specific task order for this base. That's what's at page 99. That's correct. Okay. And what's at page 99 is a part of the task order that has the marksmanship requirement among 20 requirements. Basically the point I'm trying to make is if the Supreme Court thought it was good enough for a specific representation, just by having a Medicaid billing code, just an electronic submission of this code, we're billing for X hours of services under this code, it is surely good enough here where you have this invoice and you have all kinds of specific things being represented about the services that are provided here. And again, the Supreme Court held that as a matter of law. Specific representation was not part of the remand under ESCOBAR. And we think that really does conclusively demonstrate that this is not a high bar to clear in order to get the benefit of the implied certification theory. Let me ask this of you. Tell me, in your case, what do you make of the falsification of the marksmanship records? Is that not at least an inference of materiality? Oh, absolutely, Your Honor. I mean, we think that it shows that it confirms what is sort of, again, this Court has already said, is a common sense conclusion that guards that can shoot straight are an important thing that the government would be concerned about. It also shows the triple canopy knew it. Because as this Court recognized in its prior decision, you wouldn't falsify something you didn't think the government cared about. You would just fess up and you would say, you know what, we didn't quite meet the requirement to mow our lawn on the base twice a week. You would just say that and you would be upfront about it. This really is an extraordinary case on materiality because you have this conclusive evidence that shows that they knew it was material. And again, the standard the Supreme Court set is a two-part standard for materiality. It's if a reasonable person would attach importance to the matter and if the defendant knew or had reason to know that the government attached importance to it. You have both components sort of satisfied in spades. One final point of my time is running out on materiality. This case is actually very close to the example that the Supreme Court gave of something that would be material as a matter of law. The Supreme Court cited the example of if the government ordered guns but failed to specify that the guns it orders must actually shoot, a reasonable person would clearly realize the importance of the imperative of a functioning firearm. Similarly here, if the government hadn't even said we want specific marksmanship records, but just said we want guards, it would be a good case for us even if we hadn't had you put in marksmanship records that specified that the guards can shoot straight. But here we actually did. We took the further step. So this is like a case that is even stronger than what the Supreme Court said would be material as a matter of law. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Trey Mayfield here on behalf of Relator Omar Bader. The position of Relator is the same as that of the government. Frankly, the Escobar decision could have simply reprinted this Court's decision below a dribble canopy. There is no difference and no daylight between the two. With respect to the issue that the of those 12 months, dribble canopy represented that it was requesting payment for guards. Are you adding anything to what has already been said? Not much, Your Honor. Just a couple of minor points. First, if I could... I'm just trying to figure it out. It sounds like he's already argued both points of what was an Escobar decision. What are you going to say in addition to that? A couple things. First, dribble canopy has raised a parade of horribles, both the first time around and now back on remand, that this will now turn every contract dispute into a false claims act. Wait one second. We didn't listen to him the first time, did we? I think you listened to him, Your Honor. Did we buy that argument, a parade of horribles? I don't believe you did, but they have raised it. So, I'm with Judge Wynn. What else are you adding to this argument now? Give me a moment, Your Honor. Let me see if I can adapt. It seems to me you ought to know if there's something you want to add. The government has made a very strong argument for you, but I'm just back with Judge Wynn. What are you adding? We note your appearance and you stood up and made an argument, but I just wonder if there's anything else that you want to add to the substance of the argument. I will leave the rest of my time to the government to respond, Your Honor. Thank you very much. Ms. Lee. Thank you, Your Honor. It is Tara Lee on behalf of Appellee Triple Canopy. Not surprisingly, Triple Canopy does not view this complaint similar to Mr. Scrubber and the government's position. We feel very strongly that when the allegations of this complaint are now weighed and measured against the strict and rigorous standards set forth in the Escobar opinion, two conclusions are inescapable. There is not enough specificity in the DD-250 presented to you and there is not enough materiality pled in this complaint to satisfy the standards set forth in Escobar. So, why would the analogy that was delivered by the government with respect to the hypothetical the Supreme Court used in Escobar about guns being able to shoot, why would that be any different with guards? Well, in this particular case, Your Honor, because in the Escobar case, the court takes great pains to point out the importance of a specific representation on the invoice that can be later connected. Well, in their example on guns, they don't include any specific example from a contract specification that the gun be able to shoot. It's just implied as part of what would happen in the ordinary courts. And it may be that for every gun, in order to function as a gun, you have to be able to shoot. It just doesn't happen to be the case that for every guard, it is always true that you have to have marksmanship. In the event of any example, even hypothetically, where a guard's incapacity to shoot would not be implied as a matter of course, even outside of a war zone. Well, as a matter of fact, Your Honor, and what's important to remember is that this is a pleading standard case, and this is the reason that's particularly important. Were this case to progress eventually through the proof at trial, you may see 700,000 hours of guard time logged without a single bullet ever chambered. This may be the very guard function that doesn't involve that. I might not have known how to chamber it. I'm sorry, Your Honor? I might not have known how to chamber it. So why don't you answer the question that I ask you. Give me the hypothetical where a guard's inability to fire their weapon is not an implied necessity of the contract. When the guard's function is to check IDs. When the guard's function is to conduct vehicle searches. When the core requirements of the position are not to shoot. When the Geneva Conventions and other treaties that control the guard's functions preclude them from shooting with a rifle. When the rifle is being held for a deterrent value and not for its shooting value. And that's a serious argument you want to make for guards guarding American troops in a war zone. It's not, Your Honor. It is so not the argument that I want to make. It sort of sounds like the argument. It's not. I'm doing my very best to answer the question that you led with, and it is, I promise you, not an argument that I want to make. It is a very nearly impossible argument to make, especially at a pleading stage. It is a come-on-man argument. It is unwinnable at this stage. What is important at this stage is the standard that Escobar set forth. Because it's a pleading standard. And what they requested of courts that follow them in the specificity requirement is that the invoice does more than request payment. If you compare the Escobar complaint and invoice to this one, they're vastly different. And they're different in ways that really matter. How is it different? I mean, that's really interesting. Escobar case, essentially the claim was for therapy. It did not make any specificity in terms of you had to be licensed or have a particular degree of expertise. It was just therapy. And the court there found that was sufficient to establish or apply a false certification claim. Well, what you were able to do with the Escobar complaint and the operative complaint in the Escobar case at the First Circuit was the second amended complaint. You can take that 50 or so page complaint and everything that was attached to it and there are regulations cited in it where you can take the billing code that's on the invoice and you can look at the regulation that it cites to and you can see that that individual employee that the complaint alleges does not have a certification to be a psychiatrist because she did not pass a board certification has been billed nonetheless as a psychiatrist. And you can see... I get the argument in terms of the facts. But somewhere in our previous decision, we went to the element of common sense. I know we did it with regard to what I think the materiality element is of it. But we are talking about gods in a foreign country who are in a position where they ought to be doing some very important work and you think that the government is paying someone just to check an ID and that they can't even shoot. You go out and you get 40 gods who can barely hold up a gun and you bill the United States government for the services of a god when everybody knows that you need to be able to shoot if you're in one of those countries, particularly this particular country, and you're guarding these type of facilities. It must be you mentioned some difficulty in terms of how to argue something in terms of on the face of it. That has to be difficult because you're telling me you're comparing therapy services. That's totally different. And well, the court could either say, well therapy services, we're going to let that go. But how can we let that go? How can we just ignore this and say that's not specific enough. These gods can just be, reach on the street and get anybody who can see straight and ask the question, do you have an ID and they're good and you can bill for the services of someone who otherwise should be trained as much. Well, let me begin by telling you that there is no one who agrees with you more about the difficulty of that argument. This is my second trip here. What I think is important to you is that you have a choice how to plead this case. The government had at its access the possibility of pleading from the contract materials, the definition of guard and bringing it to you that way. They brought it to you instead by choice and you can see in the joint appendix at 131 to 134, the colloquy with the district court judge who pointed out the potential deficiencies that may come up later in this complaint and had this back and forth with the government. Do you have the information that you want to include it? Response, no. We want to test the pleadings on the broader theory. The broader theory being that we needn't define these terms, that we needn't identify these specifics. What were they called? Static security guard posts, the outside of fobs. In a military type city? There are military personnel on the installation, yes, your honor. I'm just thinking, I spent a long time in the United States Navy and I just don't remember us hiring folks who couldn't shoot. Anybody that would even think if they saw the word guard you could just put someone out there in front of that installation and say you know, Marine, we got you out here, you don't need to be able to shoot anything just be able to ask for ID and check to see if it's up. Your honor, I share your naval service background and all of your opinions about the importance of these functions. I have the advantage of knowing the company well and feeling confident that if you were the trial judge who ultimately saw the facts put to proof in this case your feelings about how the relator's allegations came about, about the other possible explanations for how a relator brings forward these kinds of causes of action would not be limited to the conclusion that the guards can't shoot straight. I think it is important to know that what has happened to this, can the guards shoot straight? Yes, your honor. Well, if they can, why did your client falsify records? Your honor, this is what I No, just answer that question. I am. Why did your clients falsify records if they can shoot straight? Your honor, this complaint is based on the relator's allegations that came forward that were brought to the government. Those are 300 or so cards that were created by a relator after he was already working with lawyers to create a lawsuit. So stop for a second. You're representing to the court, I know it's the pleading stage, you're representing to the court in this argument that your client did not falsify records. I am representing to this court and I know this has nothing to do with this argument, but I am constantly being asked about the facts of it, that when we go to prove this case, I no longer even think the government in this case is going to bring the relator's records forward as evidence. I highlight this only because I didn't ask you all of that. I didn't ask you all of that. I said this is the pleading stage, but you are making a representation to this court that the records were not falsified. Yes, I am, your honor. I am. But that's the allegations we have in front of us now, the pleading stage, correct? Yes. Alright, so that's why we take, do we take that to be true? You do, your honor. So if records were falsified at the pleading stage, that's what you want to talk about, fine, but at the pleading stage we are looking at a set of facts which indicate your client did falsify records on their ability to shoot, correct? Yes, your honor. What are we supposed to do with that at this stage when it seems pretty obvious to everybody, maybe almost everybody, that guards have to be able to shoot straight to do their job in this situation and those records were falsified. What are we to do with that? Ignore it? No, your honor. But I think what is important is that you weigh it against a pleading standard that the Supreme Court has put forth. And the Supreme Court just very recently said that rules 8 and 9 have to be satisfied. And there isn't a specific representation about... Well, stop for a second. Stop for a second. Then go back to the question that Judge Agee asked. The court gave the hypothetical. They didn't say anything about certifying that the gun could shoot. They just said if the government orders guns, or if you order a gun, you expect it to be able to shoot. It seems to me that hypothetical deals with your heightened pleading standard based on what the Supreme Court did. And it seems to me it's very difficult for you to get around that hypothetical. You think that's not a problem for you? I do, your honor. I particularly think that it's a problem if the hypothetical is substituted for the court's rule. Because the hypothetical could be applied to every single invoice in every single contracting situation instead of... Maybe not. Maybe not. Maybe not. But maybe we use that statement against your clients on another case when they come up saying that it could be. The court didn't think that. The court didn't throw in that hypothetical to make another point. The court put a hypothetical in, I believe, to elucidate the point they were making. And they made it right there in the hypothetical. Why else do you think... If you think that's much broader than their rule, you think what? They forgot what they were writing when they put that hypothetical in, that opinion? I don't, your honor. But I do think that it should be read with some caution. Because if you look at the pleading and understand that the government and the relators elected to stand on the pleading, you cannot read Escobar's footnote 6. And let's move just to materiality for a moment. Setting aside how we feel about the specificity of the invoice because we are comfortable going with the analogy and saying we just can't get past the idea that we all believe that we can assume what guards do and we're just going to not need it to be clear in the complaint or spelled out in the complaint because we just know it. And we're going to accept that. Moving to materiality, which is the second specific and separate requirement from    Now, I'm going to ask you a question. I'm going to ask you a question. Before you do so, I want to make sure what you just argued. Did you argue... Is there anything in your argument that says the government co-opted or worked with the relator to falsify those records? No, Your Honor. No. And I want to be clear. This is not what I come to argue. I'm attempting to as honestly and before the court answer the questions that I can answer. And they're all for later. But this is part of what is important about what comes out of this opinion because of the decision to stand on the facts as pled and because of the importance of pleading standards. And this court, the Fourth Circuit, has recognized this in four different opinions in Takeda and Wilson and Harrison, defendants that have to litigate all the way up because the government wants to test a broader legal theory rather than amending and adding in facts at the initial stage. Then this opinion that declares that the company has guards that can't shoot straight becomes what the company lives with as its reputation and its loss of goodwill. And in the Takeda opinion, I think the court very appropriately noted that that is a significant harm that we try to avoid when we worry about pleading standards. These are not ticky-tack, small, unimportant things. You end up in a situation where for four and a half years, a defendant can't bring forward its defense. Wait one second. So is your argument that the government couldn't have argued specifically that the guards could not shoot straight, that it was a condition of the contract? You don't think the government could have said that in the complaint? I thought you'd think they should have been more specific about alleging the guards couldn't shoot straight, that you falsified. That still would have hurt your reputation. No, wait. That still would have caused you the damage you're complaining about, about loss of reputation. It still would have. No, I'm referring specifically, Your Honor, to the option that they had to amend the complaint at the district court level rather than proceed. No, no, no. I'm not talking about that. I just thought you said, because they played it so broadly that your company's reputation, your client's reputation has been damaged. That's what you said. They could have played it as specifically as you wanted if they could do so reasonably and in good faith and you would still have the same reputational damage, wouldn't you? I don't believe so, Your Honor. Why not? Because you would still be right here at the pleading stage arguing about it right now. It would have been four and a half years ago, Your Honor, and the case would have been tried rather than appealed. Wait, wait, wait, wait, wait. Are you sure about that? You wouldn't be fighting that pleading and saying that wasn't sufficient? Is that what you're saying? That if they had played it more specifically, you would have dropped all challenges to their claim and you would have gone directly to trial? That's what you're saying? Your Honor, I'm referring to the colloquy at 131 to 134 in the joint appendix where Judge Lee is describing to them what their complaint would mean. I'm not asking that. I'm talking about your representation about injury to your client because he faced a pleading and you said that if they had played it more specifically the same type of allegations that you would have gone straight to trial and not challenged any of that? Your Honor, what I'm saying is that at the colloquy at 131 to 134, it's clear that we would not have had that choice at that point. That is Judge Lee explaining what would need to be in the complaint for us to not be in the position of coming to the 4th Circuit on these facts. And all I'm... That doesn't stop... No, wait, wait. That doesn't stop... Wait a minute now. I was a district judge for 12 years. Are you telling me if a district judge tells you something, you can't go to the 4th Circuit? I don't believe you'd believe that. It's not the persuasive point I was hoping to have it be, Your Honor. I'm happy to move on. If we could perhaps focus on materiality, which I think is fairly straightforward in the Supreme Court's opinion. The Supreme Court says very clearly at footnote 6 that in materiality you must plead facts to support materiality now under Escobar. They say that they have changed and they are rejecting what the 7th Circuit has asserted and that they are setting forth a standard that from henceforth could have influenced the payment decision is not a sufficient standard. All I would like to point out is that in this complaint as pled at paragraph 56, that is the very characterization of the materiality standard that appears in this complaint. What do you make of the statement that we made in the opinion we issued where we stated common sense strongly suggests that the government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight. That's a statement we made in that case. If we take what we said to mean what we said, isn't that materiality? I cannot refute the common sense of the statement at all, Your Honor. I won't even attempt to. So what has changed? You said the pleadings are different. The pleadings are the same as they were before. Everything is the same. The only thing we have is Escobar. And we said that previously. And I think what Escobar has added is something that was not clear before. In other words, how does it make that statement not true? It does not make the Court's observation of common sense untrue. But what it urges the Court to do is require that facts supporting that conclusory statement of materiality that appears at paragraph 56 be pled. Well, if the statement that Judge Wynn has just recited is valid in our prior opinion as to materiality, and the Supreme Court's decision in Escobar doesn't change that, what do you have? What's left? The space between a judicial observation based on common sense and a pleading of facts to support materiality. The type of facts that might support materiality are actually suggested in the Escobar opinion and were If it was sufficient in our prior opinion and the Supreme Court hasn't changed that, I don't understand what would be different now. Because I think the Supreme Court has changed that. They haven't changed the validity of the common sense observation, Your Honor. But they have said very clearly that certain things are the type of facts that would suffice as facts supporting a sufficiently pled materiality allegation. You're saying we can't use common sense? I would hope that judges would always use common sense, Your Honor. We've got a straight legal way common sense goes out the window and we don't get to use that. It doesn't, Your Honor. But I would also hope that while using common sense, that you would also appreciate that there are, in this circuit, four very important reasons for pleading standards. We said common sense strongly suggests this. It's pretty much on point. But if we go with that statement, you've acknowledged that is materiality. That satisfies it. That statement would, if that's true, if common sense is also supported by the pleadings, if we found that, that would be sufficient. I don't think it is, Your Honor. I think that what Escobar is specifically asking courts to do is to require facts to be pled by governments and relators. And here's the reason. The letter of Escobar is one thing, and that's what I've been focused on. The spirit of Escobar is about the fact that they have opened the door to this category of potential fraud claim that is implied certification. What they're really doing is making a decision about what kinds of contractual violations are contract claims and what kinds qualify as fraud claims. And in doing that, they're setting the parameters for what kinds you let through. I have the answer to your question. Anything else you want to add in closing? Your Honor, I would urge you to look at the fourth factor. I know it has not been a persuasive point to you, but it is a real issue for defendants that face these claims. I would urge you to consider the possibility that this complaint requires amendment. The government has conceded so in its brief, and I feel as though Escobar suggests that amendment is warranted in both specificity and materiality. And I would urge you for reasons related to the four factors set forth in Takeda to not only affirm the dismissal in the case, but to consider denying leave to amend. Thank you. Thank you very much. Mr. Scarborough? Just a couple of very quick points. It's obvious that the Court understands our major points here. With respect to materiality, we completely agree that nothing, Escobar doesn't change anything about the Court's prior observation about common sense strongly supporting this conclusion that the government payor would care about the fact that the guards couldn't shoot straight. And the argument that I heard from counsel was that we haven't specifically alleged that. I urge the Court to look at JA44, where there's a series, paragraph 71, 72, and 73, where we say specifically in the complaint, if the government had known the guards couldn't shoot, we would not have paid. Like three times in a row. So the allegations are there. And the context makes clear that that's a perfectly plausible allegation. That leads me to my second point, which is, and Judge Shedd, you made this a couple of times, is that we are at the pleading stage. All we're asking is to go forward on the pleadings here. Maybe there will be a need to amend later on down the road, but we're asking to proceed on these claims. What you heard from counsel was a lot of a merits defense. We're not at that stage. And the final point that I would like to make, and the Court has made this repeatedly, is that in order to function as guards, you have to be able to shoot straight. That's a common sense conclusion. And we would be okay, even if there wasn't a specific marksmanship requirement, we would have a strong implied certification claim. However, we have a much stronger case here. We have a contract that actually says, it clarifies and confirms that we care about guards being able to shoot straight, because it has a marksmanship requirement. Objective qualifications that the guards have to satisfy, and the scorecards showing they satisfy. So that's what makes this really an easy case. It's, in some respects, implied certification in spades. What's the strongest evidence of materiality, in your opinion? Single strongest piece or argument for materiality. It's difficult. I think that I would focus on the fact that the inability to shoot straight, to pass the marksmanship, goes to the essence of the government's bargain. That's one of the factors that the Supreme Court identified, is whether the requirement allegedly violated goes to the essence of the bargain. This really does. So you go to the gun hypothetical. Well, yes. The gun hypothetical, I think, illustrates that the Supreme Court understood, and was very much confirming that the implied certification theory can be used in this context. It goes to the essence of the bargain, and the fact that these are not minor or insignificant violations. Sometimes you have a claim where there's peripheral violations that the government, it's maybe difficult to tell whether the government cares about. This is like all of these guys couldn't shoot straight for the entire period of the contract, and you had falsified records. We don't think that all of those conditions are necessary, but it's what makes this an easy case. So we urge the court to reaffirm and largely give us the same opinion you gave us before, except plugging in sites to ask a bargain. Thank you, Your Honor. Thank you very much. We'll come down and greet counsel and move to our next case.
judges: Dennis W. Shedd, G. Steven Agee, James A. Wynn, Jr.